UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CATHERINE L. LINDERMAN, M.D.                         6:12-cv-1703-TC

                                    Plaintiff,

                                                     FINDINGS & RECOMMENDATION

              v.

VONA HUGGINS NICHOLS, aka VONA E
HUGGINS; STONEWALL FARMS, LLC;
and DAVID CAINS, INDIVIDUALLY AND
d.b.a. STONEWALL FARM ARABIANS,

                                    Defendants.
_____

COFFIN, Magistrate Judge:

        Plaintiff, Catherine Linderman, an Idaho resident, brings this action asserting claims for

breach of fiduciary duty, constructive fraud, and conversion, and seeks a judicial dissolution of

partnership and imposition of a constructive trust.

        Defendant Vona Huggins is an Oregon resident. Defendants David Cains, Stonewall Farms,

Page 1 - FINDINGS & RECOMMENDATION

LLC, and Stonewall Farms Arabians (the Stonewall defendants) are Arizona residents.

Plaintiff alleges that she and defendant Huggins are general partners in Les Amies Arabians (LAA) which conducts its business from its principal office in Idaho.[1]  LAA purchased two breedings per year to an Arabian Stallion named Eternity in the Fall of 2000.  LAA acquired other Arabian horses thereafter and has continued to operate as an Arabian horse breeding business.

In June of 2005, plaintiff alleges she purchased an Arabian mare named VONA SHER-RENEA and contributed her to LAA.  However, plaintiff alleges, that defendant Huggins changed the recorded ownership of VONA SHER-RENEA with the Arabian Horse Association from LAA to Huggins' own name without plaintiff's consent on or about April 12, 2012.  Plaintiff further alleges that Huggins then transferred the registered ownership to herself and the Stonewall defendants on about May 1, 2012.  Plaintiff also alleges that defendant Huggins similarly caused the registered ownership of, among other Arabians, ETERNALOVE and SHERVASTA to transfer to Huggins individually.  Plaintiff alleges that Huggins subsequently transferred an ownership interest in these Arabians to the Stonewall defendants.

Plaintiff's claims include conversion of ten horses by defendant Huggins, all of which she brought to Oregon.  Plaintiff further asserts constructive fraud and seeks imposition of a constructive trust over VONA SHER-RENEA, ETERNALOVE and SHERVASTA which defendant Huggins allegedly covertly transferred to herself and then to herself and the Stonewall defendants.  Plaintiff alleges that the subject horses were then transported by Defendant Cains' hauler from Oregon to the Stonewall defendants in Arizona.  The other seven allegedly misappropriated horses are held by defendant Huggins in Oregon.  Plaintiff asserts that all of the Arabians are property of LAA.

---

[1]Plaintiff alleges that the partnership agreement is an oral agreement.

Page 2 - FINDINGS & RECOMMENDATION

Plaintiff maintains that the Stonewall defendants entered into an "Equine Partnership Agreement" (EPA) on April 13, 2012 with defendant Huggins. The EPA grants equal rights in title to the subject Arabians and any offspring. The EPA further provides equal sharing in proceeds from harvesting of ova and sale of embryos. Moreover, decisions regarding the sale of offspring is by mutual agreement of the Stonewall defendants and defendant Huggins. Plaintiff contends that the Stonewall defendants knew of Huggins' partnership with plaintiff and that they acted in concert with Huggins to deprive plaintiff of her ownership interest in the subject Arabians and converted the mares to their own use.

The Stonewall defendants move to dismiss asserting that the court lacks jurisdiction over them and that venue in Oregon is improper. In the alternative, these defendants seek transfer to the District of Arizona.


A.    Personal Jurisdiction

Given that subject matter jurisdiction is based on diversity, the law of Oregon applies to the issue of personal jurisdiction. See Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998). The law of the State of Oregon permits a court to exercise jurisdiction over any party so long as "prosecution of the action against a defendant in this state is not inconsistent with the Constitution of this state or the Constitution of the United States." Or.R.Civ.P. 4 L. Thus, the long-arm statute of the State of Oregon is coextensive with the limits of federal due process. Gray & Co. v. Firstenberg Mach. Co., 913 F.2d 758, 760 (9th Cir. 1990). Plaintiff bears the burden of demonstrating personal jurisdiction. McGlinchy v. Shell Chem. Co., 845 F.2d 802, 817 n. 10 (9th Cir. 1988). Plaintiff need only make a prima facie showing of jurisdictional facts. Sher v. Johnson,

Page 3 - FINDINGS & RECOMMENDATION

911 F.2d 1357, 1361 (9th Cir. 1990). In such cases, the court only inquires into whether plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction. Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d 126, 128 (9th Cir. 1995). Although plaintiff cannot simply rest on the bare allegations of her complaint, Amba Marketing Systems, Inc. v. Jobar Int'l, Inc., 551 F.2d 784, 787 (9th Cir. 1977), uncontroverted allegations in the complaint must be taken as true. See AT & T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996).

When the activities of a defendant within the State of Oregon are "continuous and systematic" or "substantial," a court may exercise general personal jurisdiction over that defendant without offending notions of due process. See Lake v. Lake, 817 F.2d 1416, 1420 (9th Cir. 1987). There is an insufficient basis to conclude the Oregon courts can exercise general jurisdiction over the Stonewall defendants.

Oregon courts use a three-part test for determining when limited jurisdiction may be exercised over defendants: 1) the nonresident defendants must have purposefully availed themselves of the privilege of conducting activities in the forum by some affirmative act or conduct; 2) plaintiff's claims must arise out of or result from the defendants' forum-related activities; and 3) exercise of jurisdiction must be reasonable. Roth v. Garcia Marquez, 942 F.2d 617, 620-21 (9th Cir. 1991).

Although the record is not entirely clear as to who transported the subject mares, it appears that they were sent to Arizona about six weeks prior to Huggins and the Stonewall defendants formal EPA. It appears that the horses initially went for an "evaluation" to determine whether to enter into a partnership and that defendant Cains hired the hauler at least for SHERVASTA and VONA SHER-RENEA (albeit, apparently at Huggins' direction) . It also appears that at the time the mares were sent to Arizona, the registry would have still indicated Linderman's (or LAA's) interest, but

Page 4 - FINDINGS & RECOMMENDATION

apparently Huggins told Cains she had sole ownership.

Regardless of the Stonewall defendants knowledge of ownership[2] and regardless of the timing of the EPA, the Stonewall defendants agreed to take possession of the disputed mares in Oregon from an Oregon resident and later agreed to enter into an ongoing partnership with an Oregon resident taking part ownership in the disputed mares.[3]   Accordingly, defendants have purposefully availed themselves of the privilege of conducting activity in the forum state and the claims in this case arise from that very activity.   Accordingly, the burden shifts to defendants to demonstrate it is unreasonable to exercise jurisdiction over them.   Boschetto v. Hansing, 539 F.3d 1011, 1016 (9th Cir. 2008).

In determining reasonableness, courts consider: (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the

---

[2]Defendants assert that they will seek summary judgment asserting there was no way they could have known of LAA's interest in the mares, but that is not an issue the court can resolve on the present motion.   Nor does defendants' assertion negate the fact that the defendants contracted with an Oregon resident for first the possession for evaluation and later part ownership of Arabians from Oregon.   The contacts that defendants had with an Oregon resident are the very subject of this litigation.

[3]The fact that the EPA provides that it shall be construed and interpreted in accordance with Arizona law does not negate the purposeful availment in Oregon demonstrated by the ongoing relationship with an Oregon partner in a partnership concerning the subject matter of this litigation.   The ongoing partnership, regardless of applicable law makes the Oregon contact more than a mere attenuated contact.   Although the mares remain in Arizona which mitigates the weight of the ongoing relationship with the Oregon resident, the alleged claims arise out of the purported conversion which primarily occurred with the removal of the mares from Oregon allegedly without the knowledge or consent of plaintiff.

Page 5 - FINDINGS & RECOMMENDATION

existence of an alternative forum.   Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1132 (9th Cir. 2003).

Defendants' contacts with Oregon are more than attenuated with respect to the claims in this case.  At the time when the registry allegedly indicated that LAA retained an interest in the Arabian horses, defendant Huggins, an Oregon resident, purportedly directed defendant Cains to arrange for a hauler to come to Oregon to take the horses to Arizona for "evaluation."  This forum related activity forms a significant part of the alleged conversion and basis for a constructive trust.

As to the competing burdens, it does appear that the burden on plaintiff, an Idaho resident, is not greatly increased by litigating in Arizona rather than Oregon.  In addition, the burden on the Stonewall defendants is obviously greater in litigating in Oregon.  However, this case is primarily about the actions of the Oregon defendant Huggins and primarily her actions in Oregon.  This factor does not demonstrate it is unreasonable to exercise jurisdiction over the Stonewall defendants.

Arizona law may be applicable to any potential claims that the Stonewall defendants raise against Huggins and may be applicable to plaintiffs attempts to pierce the corporate veil, but, for the most part, the claims raised by plaintiff involve Oregon law.  Arizona's interest in this litigation does not outweigh Oregon's sufficiently to make the exercise of jurisdiction over the stonewall defendants unreasonable.

The involvement of parties from three states with actions occurring in all three complicates matters and effects judicial efficiency no matter where the case is litigated.  The formation and violation of the LAA involves actions in Idaho, but that is of no concern to the Stonewall defendants with respect to the present motion.  The complaint primarily concerns itself with defendant Huggins, an Oregon resident.  Any judgment against the Stonewall defendants would have to be entered in

Arizona for collection, if necessary. Plaintiff's choice of Oregon as a forum, given the activities by defendant Huggins, is reasonable and hailing the Stonewall defendants into Oregon is not unreasonable given their dealings with Huggins.

After consideration of the factors concerning the reasonableness of the exercise of jurisdiction, plaintiff's choice of Oregon as the forum in which to litigate this action is reasonable and it is not unreasonable for Oregon court's to exercise jurisdiction over the Stonewall defendants. The motion to dismiss based on an assertion of lack of personal jurisdiction should be denied.[4]

B.    Venue

A substantial portion of the acts giving rise to the claims in this case arose in Oregon given that plaintiff alleges that all of the allegedly converted horses were transported to Oregon by defendant Huggins and 7 of those horses remain in Oregon while the other three were allegedly transported out of Oregon by the a hauler hired by defendant Cains. Accordingly, venue is proper in Oregon under 28 U.S.C. § 1391(b)(2). Moreover, given that all defendants are subject to personal jurisdiction in Oregon, venue is also appropriate under 28 U.S.C. § 1391(b)(3).

However, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Before convenience can be determined, the court must determine

_____

[4]Plaintiff also suggests that the Stonewall defendants are estopped from asserting lack of personal jurisdiction because defense counsel drafted a motion for extension of time to answer, which plaintiff's counsel edited and filed. Defense counsel asserts he sought the extension to explore settlement first. The court granted the extension of time and the Stonewall defendants asserted the jurisdictional issue in their first responsive pleading. Defendants have not waived the issue of personal jurisdiction.

Page 7 - FINDINGS & RECOMMENDATION

if this action could have been commenced in the District of Arizona.

Although many of the claims against Huggins arise in Oregon (and Idaho), venue is certainly appropriate in Arizona with respect to the Stonewall defendants. Moreover, Huggins' alleged conversion of three of the ten horses also involve Arizona and Huggins is subject to general jurisdiction in Arizona.

As part of the section 1404(a) analysis, the court should consider private and public interest factors affecting the convenience of the forum. Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).

> Private factors include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). Public factors include "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." Piper Aircraft, 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6 (quoting Gulf Oil Corp., 330 U.S. at 509, 67 S.Ct. at 843).

Id. Of course, a court must balance the preference accorded plaintiff's choice of forum with the burden of litigating in an inconvenient forum. Id. Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. Gulf Oil Corp., 501 U.S. at 508. Other factors a court may consider include: (1) the location where the relevant agreements were negotiated and executed, (2) the respective parties' contacts with the forum, (3) the contacts relating to the plaintiff's cause of action in the chosen forum, (4) the differences in the costs of litigation in the two forums and (5) the presence of a forum selection clause. Stewart Org. v. Ricoh Corp., 487

U.S. 22, 29-31 (1988).

The negotiation of the LAA is problematic given that it was allegedly oral in nature and has its genesis in plaintiff's introduction to Huggins in Arizona. Huggins and plaintiff, however, apparently consummated the agreement after the two returned to their respective states of Idaho and Arizona. Obviously the EPA suggests Arizona is the more appropriate forum. Three of the disputed Arabians are located Arizona, but seven remain in Oregon. Arizona law appears to be the applicable law regarding plaintiff's ability to pierce the corporate veil, but Oregon appears appropriate otherwise. The expense and inconvenience associated with any of the possible forums in this case generally appears equal. Indeed, defendant Huggins would likely cry foul if plaintiff's claims were brought against her in Arizona even though of the possibility of claims directed at her by the Stonewall defendants is subject to Arizona law. Thus, plaintiff's selection of forum suggests venue should stay with the District of Oregon. Accordingly, the court should decline to dismiss based on venue or to alternatively transfer to the District of Arizona.

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss (# 48) should be denied.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections

Page 9 - FINDINGS & RECOMMENDATION

to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this _4th_ day of November, 2013.

THOMAS M. COFFIN
United States Magistrate Judge