UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CATHERINE L. LINDERMAN, M.D.

                         Plaintiff,

              v.

VONA HUGGINS NICHOLS, aka VONA E
HUGGINS; STONEWALL FARM, LLC;
STONEWALL FARM ARABIANS, LLC;
and DAVID CAINS, individually and d.b.a.
STONEWALL FARM ARABIANS.,

                         Defendants.

6:12-cv-01703-TC

FINDINGS & RECOMMENDATION

COFFIN, Magistrate Judge:

       Plaintiff, Catherine Linderman, brings this action asserting claims for breach of fiduciary duty, constructive fraud, and conversion, and seeks a judicial dissolution of partnership and imposition of a constructive trust.

       Plaintiff alleges that she and defendant Vona Huggins are general partners in Les Amies Arabians (LAA). LAA purchased two breedings per year to an Arabian Stallion named Eternity in

Page 1 - FINDINGS & RECOMMENDATION

the Fall of 2000. LAA acquired other Arabian horses thereafter and has continued to operate as an Arabian horse breeding business.

In June of 2005, plaintiff alleges she purchased an Arabian mare named VONA SHER-RENEA and contributed her to LAA. However, plaintiff alleges that defendant Huggins changed the recorded ownership of VONA SHER-RENEA with the Arabian Horse Association (AHA) from LAA to Huggins' own name without plaintiff's consent on or about April 12, 2012. Plaintiff further alleges that Huggins then transferred the registered ownership to herself and certain Stonewall defendants on about May 1, 2012. Plaintiff also alleges that defendant Huggins similarly caused the registered ownership of, among other Arabians, ETERNALOVE and SHERVASTA to transfer to Huggins individually. Plaintiff alleges that Huggins subsequently transferred an ownership interest in these Arabians to the Stonewall defendants.

Plaintiff maintains that the Stonewall defendants entered into an "Equine Partnership Agreement" (EPA) on April 13, 2012 with defendant Huggins. The EPA grants equal rights in title to the subject Arabians and any offspring. The EPA further provides equal sharing in proceeds from harvesting of ova and sale of embryos. Moreover, decisions regarding the sale of offspring is by mutual agreement of the Stonewall defendants and defendant Huggins. Plaintiff contends that the Stonewall defendants knew of Huggins' partnership with plaintiff and that they acted in concert with Huggins to deprive plaintiff of her ownership interest in the subject Arabians and converted the mares to their own use.

Defendants Stonewall Farms, LLC, Stonewall Farm Arabians, LLC,  Stonewall Farm Arabians and David Cains seek summary judgment as to the constructive fraud, conversion and constructive trust claims against them. In addition, the Stonewall defendants seek summary

Page 2 - FINDINGS & RECOMMENDATION

judgment as to plaintiff's claims for punitive damages and attorney fees. Finally, defendants Stonewall Farm Arabians LLC, Stonewall Farm Arabians, and Cains in his individual capacity seek summary judgment asserting there is no evidence to support any claim against them.

A.    Constructive Fraud

Traditional fraud requires, in addition to a misrepresentation of a material fact, reliance on that fact to the recipient's detriment. See In re Brown, 326 Or. 582, 595 (1998) (proof of fraud requires misrepresentation, knowledge of falsity, intent to induce a response, justifiable reliance on the misrepresentation, and resulting damage). However, constructive fraud is a catch-all term for a variety of transactions in which fraud-type relief is appropriate and many of those transactions do not require either intent to deceive or actual dishonesty of purpose. See U.S. Nat. Bank v. Guiss et al, 214 Or. 563, 585-86 (1958). In Pollack v D.R. Horton, Inc.-Portland, 190 Or. App. 1, 21 (2003), the Oregon Court of Appeals cited Texas case law finding a constructive fraud claim identical to a claim for breach of fiduciary duty based on a special relationship. See Welder v. Green, 985 S.W.2d 170, 175 (TexApp. 1998) (constructive fraud and breach of fiduciary duty amount to identical causes of action; both require the existence of some special relationship and a breach of the trust engendered by that relationship). Here, plaintiff asserts that the Stonewall defendants are liable for constructive fraud because they assisted defendant Huggins in breaching her fiduciary duties to plaintiff. Accordingly, plaintiff relies on an aiding and abetting argument to assert a constructive fraud claim against the Stonewall defendants:

> all who aid, command, advise, or countenance the commission of a tort by another, or who approve of it after it is done, if done for their benefit, are liable in the same manner as they would be if they had done the same tort with their own hands.

Perkins v. McCullough, 36 Or. 146, 149 (1899).  In other words, one may be jointly liable for the torts of another if he acts tortiously in concert with another pursuant to a common design with him, knows the other's conduct constitutes a breach of duty and gives substantial assistance, or gives substantial assistance in accomplishing a tortious result with his own conduct separately constituting a breach of duty to the person harmed.  Granewich v. Harding, 329 Or. 47, 53, 55 (joint liability under theories in Section 876 of the Restatement (Second) of Torts).

The Oregon Supreme Court has expressed some skepticism about the constructive fraud theory.  Pollock, 190 Or. App. at 21 (citing Knight v. Woolley Logging Co., 278 Or. 691, 694-95 (1977)).  While to construct a fraud based on a fiduciary relationship and then impute that fraud to another stretches the theory, there is, nonetheless, support under Oregon law for such a cause of action.

The relationship alleged to exist between defendant Huggins and plaintiff appears to be an ordinary two way street relationship in that they were both general partners in LAA.  There appears to be no indication of a special fiduciary relationship wherein defendant Huggins owed a greater duty of care to plaintiff.[1]  However, under ORS § 67.155 partners owe the fiduciary duties of loyalty and

---

[1] A Fiduciary relationship requires confidence reposed on one side resulting in superiority or influence. Allen v. Breding, 181 Or. 332, 342 (1947) ("Fiduciary relationship includes not only legal and technical relations. It is found wherever there is confidence reposed on one side and resulting superiority and influence on the other."); see also Patterson v. Getz, 166 Or. 245, 287 (1941) ("A 'fiduciary' or 'confidential' relation ... exists 'in all cases where there has been a special confidence reposed in one who in equity and good conscious is bound to act in good faith and with due regard to the interests of the one reposing the confidence.'") (quoting Anderson v. Watson, 141 Md. 217, 118 A. 569 (1922)).  Fiduciary relationships usually arise in one of four situations: (1) when one person places trust in the faithful integrity of another, who as a result gains superiority or influence over the first, (2) when one person assumes control and responsibility over another, (3) when one person has a duty to act for or give advice to another on matters falling within the scope of the relationship, or (4) when there is a specific relationship that has traditionally been recognized as involving fiduciary duties, as with a lawyer and a client

care to the partnership and to the other partners. A partner must discharge these duties to the other partners consistent with the obligation of good faith and fair dealing. ORS § 67.155(4). The <u>Welder</u> decision, cited by the Oregon court of appeals in <u>Pollack</u>, found the breach of such duties could constitute constructive fraud. <u>Welder</u>, 985 S.W.2d at 175:

> Partners are charged with a fiduciary duty. <u>Bohatch v. Butler & Binion</u>, 977 S.W.2d 543, 544–45, 41 Tex. Sup.Ct. J. 308 (Tex.1998); <u>AIG Risk Mgmt., Inc. v. Motel 6 Operating L.P.</u>, 960 S.W.2d 301, 304 (Tex.App.—Corpus Christi 1997, no writ). The misappropriation by one partner for his own use the property of the partnership is constructive fraud. <u>Veale v. Rose</u>, 657 S.W.2d 834, 837 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). A fiduciary owes its principal a strict duty of good faith and candor, as well as the general duty of full disclosure respecting matters affecting the principal's interests; there is a general prohibition against the fiduciary's using the relationship to benefit his personal interest, except with the full knowledge and consent of the principal regarding all material facts.

The Oregon Supreme Court has determined that one who knowingly aids another in the breach of a fiduciary duty is liable to the one harmed by the breach even if that party does not itself owe such a duty. <u>Granewich v. Harding,</u>, 329 Or. 47, 57-60 (1999). Thus, although there does not appear to be an Oregon case directly finding a party liable for constructive fraud based on an aiding and abetting theory, Oregon has found such liability based on a breach of fiduciary duty and, as noted above, has stated that constructive fraud could be based on breach of a fiduciary duty. Nonetheless, the Stonewall defendants assert that there is no evidence of a conspiracy in this case.

Although there is no direct evidence that the Stonewall defendants were aware of plaintiff's interest in the subject Arabians, an inference could be drawn that they should have known of LAA's interest and that, therefore, the transfer of the horses via the EPA with defendant Huggins aided in the violation of the fiduciary duties owed by Huggins to LAA and its partners.

---

or a stockbroker and a customer. Black's Law Dictionary (9th ed. 2009) .

Defendant Cains met plaintiff and Huggins in 2007 and plaintiff alleges that they told him about LAA and its ownership of Vona Sher-Renea and Eternalove. However, in 2012 defendant Huggins allegedly approached the Stonewall defendants representing herself as the sole owner of the horses. Prior to entering into the EPA in April of 2012, defendant Huggins represented that she held the original certificates of registration for each mare and that LAA was defunct. However, defendant Cains testified as follows with respect to Huggins's representations about the registration:

> Q.      ... Did you check the registration status of the mares before entering into the agreement?
>
> A.      I spoke to Vona about the registration papers, and Vona told me she was the owner of the horses and had possession of the papers.
>
> Q.      An did she tell you whose name was on the papers as registered owner?
>
> A.      At that time she did not.
>
> Q.      When did she -- did she tell you that later?
>
> A.      At one point Vona and I had a conversation about Eternalove and her registration papers. And I had asked her, where are the registration papers? She said I have them with me, but I have to send them to AHA to be changed.
>      And I asked, what does that mean, to be changed? I wasn't sure if she meant to herself and Stonewall. And she said that she needed to have them changed because they were in Ed Nichols's name. I said who is Ed Nichols? She said, that is my ex-husband, and I am the power of attorney. I said, okay, very good.
>      And she said -- at that point she mentioned Les Amies. I said, what is Les Amies? She said a business that no longer exists.
>
> Q.      And when did that conversation takes place?
> ....
>      [W]as that prior to this agreement being signed?
>
> A.      To the best of my knowledge it was.

Deposition of David Cains (attached to the Declaration of George A. Burgott (#102) as Ex. 1 at pp. 12-13).

Page 6 - FINDINGS & RECOMMENDATION

The EPA provided that Huggins would demonstrate, to Stonewall's satisfaction, that she was the owner of each horse. Cains testified regarding this issue:

A.    Ms. Huggins told me she was the owner of the horses, that she held the original registration papers of the horses, and she had possession of the horses; therefore I believed her.

Q.    When did Ms. Huggins Nichols make that demonstration?

....

A.    Many times.

....

A.    The first time when we spoke on the phone, the first conversation we had.

Q.    And were there any documents involved in the demonstration? Were you shown documents?

A.    At that time the horses -- there was no partnership talks. Vona wanted to send the horses to be evaluated by Stonewall Farm and put into a marketing program. She simply told me she was the owner, she held the registration papers, as I said, and the horses were located at her farm.

Q.    Did Ms. Huggins ever give you any documents in the demonstration of ownership?

A.    I don't recall.

....

I asked ... Ms. Huggins to send me a copy of the registration papers on Eternalove. She told me she needed to send them in. I said, what does that mean? Because we had not signed a contract. We had only talked about a partnership.
She told me that the papers -- she was not good with sending papers in to the AHA, and she needed to transfer it from Ed Nichols's name And that's –

Q.    Did she send you the copies of the papers at that time?

A.    No.

Q.    Did you she give copies of the registration certificates of any of the mares prior to [entering into the EPA]?

A.    She did not.

....

Q.    Did you ask her why she didn't send them?

A.    Well, Vona told me on several occasions she does not do well with computers. She can't open attachments. She doesn't know how to send things. And that was her reason.

....

Q.    Did you ever look at the Data Source at a time when Les Amies Arabians was the listed owner of the three mares?

A.    I do not have a subscription to Data Source, nor do I have a user name and password. So the answer would be no.

Q.    Did you ever, prior to entering into the [the EPA] call the Arabian Horse Association and make any inquiry concerning who was the owner of the three mares?

A.    Why would I do that?

Q.    The question is did you?

A.    No, not that I can remember.

Deposition of David Cains (attached to the Declaration of George A. Burgott (#102) as Ex. 1 at pp. 20-24).

The EPA provided that defendant Huggins would will facilitate the transfer of the AHA registrations to document that the Arabians jointly belong to Huggins and defendant Stonewall Farm Arabians and that Stonewall would be responsible for the associated costs for the transfer.

Had Cains checked the AHA registration he would have discovered that LAA was shown as the sole owner of the subject mares and that Ed Nichols's was removed as owner a year prior. This

Page 8 - FINDINGS & RECOMMENDATION

information would have raised issues as to the veracity of Huggins's claim that she was the sole owner. A trier of fact could conclude that Cains should have been aware, at a minimum, of LAA's interest in the mares.[2] The Stonewall defendants actions to help facilitate the transfer of the registrations by paying the fees of the AHA without requiring any documentation from Huggins could subject the Stonewall defendants to liability for aiding and abetting Huggins's alleged breach of her partnership fiduciary duties. The fact that the AHA breed registration documents may not always be reliable does not relieve the Stonewall defendants from making any reasonable inquiry especially in light of the EPA's requirement to have the AHA document the change in ownership to Stonewall's new partnership with Huggins. Accordingly, the Stonewall defendants' motion for summary judgment on the constructive fraud claim should be denied.

B.      Conversion

> An action for conversion lies when there has been an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel. A secured creditor with the right to possession of the collateral after default may maintain an action for conversion against one who has exercised unauthorized acts of dominion over the property to the exclusion of the creditor's rights.

Oregon Bank v. Fox, 73 Or.App. 612, 615 (1985).

Bad faith is not required, as plaintiff only need show defendant's intent to exercise control over the chattel inconsistently with the plaintiff's rights. Naas v. Lucas, 86 Or.App. 406, 409 (1987).

---

[2]Although a significant amount of time had passed since the 2007 meeting with plaintiff, a trier of fact could conclude that Cains should have been aware specifically of plaintiff's interest in the mares. Moreover, a trier of fact could find that Cains's credibility is suspect given the flimsy reason provided by Huggins as to why no documentation was provided along with Cains's substantial experience in the industry and determine that Cains or a representative of his may have in fact inquired of the AHA records and chose to enter into the EPA anyway.

"An actor commits conversion if the actor mistakenly believes that he or she is acting legally with respect to the other person's property[.]   In character or degree, conversion may occur on a spectrum from the most outright, blatant kind of theft to what may be regarded as innocent conversion." In re Martin, 328 Or. 177, 184–85, 970 P.2d 638 (1998) (citations and internal quotation marks omitted). "[W]hen the act consists of a wrongful taking, assumption of ownership over or use of the property, there is no necessity for a demand; the defendant's conduct is sufficient to prove the conversion." Oregon Bank, 73 Or.App. at 617.  Shortly after the transfer, plaintiff's lawyer contact Cains to assert her ownership interest, but Cains responded that Huggins's asserted sole ownership.

As with the constructive fraud claim, the Stonewall defendants rely on Huggins's assertions of sole ownership, this time to show that they did not intend to exercise control over *plaintiff's* property and assert that they qualify as merely an innocent purchaser. But as noted above, Huggins's assertions could reasonably have been called into question with an adequate investigation. Accordingly, there are issues of fact as to whether the Stonewall defendants qualify as a bona fide purchaser.  See Treit v. Oregon Auto. Ins. Co., 262 Or. 549, 551 (1972) ("an 'innocent purchaser' is one who *has no reasonable grounds to suspect* that the person from whom he buys an article did not have good title.") (emphasis added).    Accordingly, the Stonewall defendants' motion for summary judgment on the conversion claim should be denied.

C.   Constructive Trust

A constructive trust is an equitable remedy  available to divest an individual who has been unjustly enriched of property that he or she "ought not, in equity and good conscience hold and enjoy." Marston v. Myers, 217 Or. 498, 509 (1959).  The Stonewall defendants assert that plaintiff

may not seek damages under a conversion theory while also seeking an equitable remedy for the same conduct.

It is proper to use a constructive trust when there is some specific property identified as belonging to the plaintiff, but when no specific identifiable property is at issue and only a money judgment is requested, only the legal remedy is available. Id. Under Oregon law:

> If a pleader is unsure which theory can be established at trial, ORCP 16 C authorizes inconsistent claims or defenses, alternative statements of fact, and separate claims or defenses, "regardless of consistency and whether based upon legal or equitable grounds or upon both." Davis v. Tyee Industries, Inc., 295 Or. 467, 479 n. 9, 668 P.2d 1186 (1983).

Evergreen West Business Center, LLC v. Emmert, 354 Or. 790, 797 (2014). Similarly, the federal rules of civil procedure provide a claim for relief may include relief in the alternative **or** different types of relief. Fed. R. Civ. P 8(a)(3) (emphasis added). Plaintiff should be allowed to maintain both claims for now. See Evergreen, 354 Or. at 804 (The doctrine of election between inconsistent remedies does not require an election before the entry of judgment. A party need only choose between or among inconsistent remedies, not inconsistent claims or theories of recovery). Accordingly, the Stonewall defendants' motion for summary judgment on the constructive trust claim should be denied.

D.    Punitive Damages

> Punitive damages are not recoverable in a civil action unless it is proven by clear and convincing evidence that the party against whom punitive damages are sought has acted with malice or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety and welfare of others.

ORS § 31.730(1).

Page 11 - FINDINGS & RECOMMENDATION

The Stonewall defendants note that plaintiff has no evidence that they were aware of LAA's or plaintiff's interest in the Arabians. The Stonewall defendants assert that they relied on Huggins's assertions of ownership. Accordingly, they argue that there is insufficient evidence of malice.

As noted above, there was certainly reason to call into question Huggins's claim of sole ownership given the lack of documentation, the weak purported reason for failing to provide documentation and the failure to check the AHA registry despite the apparent importance placed on the registry by the EPA's requirement that AHA registration be changed to show the new partnership's ownership. A trier of fact could conclude that a sophisticated businessman such as Cains, represented by counsel, should have demanded more than simply Huggins's word. Although it was several years prior, plaintiff had met Cains and noted LAA's (and her interest) in Vona Sher-Renea and Eternalove. Moreover, Cains himself testified that Huggins mention LAA when asserting that changes to the registration needed to be made. Whether the failure to inquire further, when Huggins failed to provide the actual registration papers, constitutes malice under these circumstances should, at this stage, be left to a trier of fact. Indeed, as the issue develops and credibility is tested before a trier of fact, plaintiff could conceivably demonstrate that Cains's denial of the AHA registration showing LAA's interest lacks believability and thus that the EPA was entered into with a malicious and conscious indifference to plaintiff's interest in the horses. Accordingly, the Stonewall defendants' motion for summary judgment on the punitive damages claim should be denied without prejudice to be asserted at the close of plaintiff's evidence at trial.

E.    Attorney Fees

Plaintiff concedes her claim for attorney fees against the Stonewall defendants and the motion for summary judgment as to this claim should be granted.

Page 12 - FINDINGS & RECOMMENDATION

F.      Stonewall Farm Arabians LLC, Stonewall Farm Arabians, and Defendant Cains in His Individual Capacity

Defendants Stonewall Arabians, LLC, Stonewall Farm Arabians, and Cains in his individual capacity seek summary judgment as to the claims against them arguing that only defendant Stonewall Farm, LLC entered into the EPA with defendant Huggins.

Plaintiff seeks to hold Cains liable for torts he allegedly personally committed.  Defendant Cains argues that he was not acting in his individual capacity and took no personal interest in the mares.  However,

> an individual is personally liable for all torts the individual committed, notwithstanding the person may have acted as an agent or under directions of another.[footnote omitted] This rule applies to torts committed by those acting in their official capacities as officers or agents of a corporation.[footnote omitted] It is immaterial that the corporation may also be liable.

3A Fletcher Cyclopedia of the Law of Private Corporations § 1135 (1986 ed. & Supp. 1992 at 66-67); See also, Fields v. Jantec, Inc., 317 Or. 432, 438 (1993) (citing Fletcher Cyclopedia to find a corporate officer is not insulated from liability because of his status as a corporate officer, director, or agent of the corporation).  Defendant Cains argues that the operative complaint asserts a theory of a sham corporation and does not allege Cains acted on his own account, but the complaint alleges Cains personal involvement in the alleged torts.  Accordingly, defendant Cains's motion for summary judgment should be denied.

Defendant Stonewall Farm Arabians LLC is listed on the AHA registration and defendant Stonewall Farm Arabians is listed as a d/b/a for Stonewall Farm, LLC and is a registered d/b/a/ for David Cains.  Accordingly, the motion for summary judgment against these defendants should also be denied.

Page 13 - FINDINGS & RECOMMENDATION

G.    Evidentiary Objections

The Stonewall defendants object to paragraph 3 of the declaration of Paul Husband (#104) and the attached exhibit C. The exhibit is a certified copy of a cross-claim filed against David Cains in an Arizona case and will apparently relate to Cains's credibility. The court has not relied on it in determining whether genuine issues of fact exist on the motions before it. The objections are denied without prejudice to raise at trial if necessary.

## CONCLUSION

For the reasons stated above, the Stonewall defendants' motion for summary judgment (#91) should be granted in part and denied in part as noted above.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 9 day of December 2014.

_____
THOMAS M. COFFIN
United States Magistrate Judge

Page 14 - FINDINGS & RECOMMENDATION